**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

EMAR GROUP, INC.
Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY,
Defendant.

**CIVIL ACTION NO. 09-03218 (KSH)**

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

---

Ferrara and Associates
111 Paterson Avenue
Hoboken, New Jersey 07030
Attorneys for Plaintiff,
Emar Group, Inc.
201- 798-5010

Of Counsel and on the Brief:
        JOSEPH FERRARA, ESQ.

{00506305.DOC}

**TABLE OF CONTENTS**

Table of Authorities ......................................... ii

PRELIMINARY STATEMENT ......................................... 1

STATEMENT OF FACTS ............................................ 3

LEGAL ARGUMENT ............................................... 6

**POINT 1**
DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE
PLAINTIFF'S STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED. ..................................................... 6

a. Plaintiff States Various Claims Cognizable Under
the Law, a Claim and Do So with Sufficient
Particularity Under Fed. R. Civil P. 9(b) ............. 7

1.As a Direct and Proximate Result of
Continental's Breach of Contract by Refusal to Pay
the Modica Claim, Emar Suffered Significant Financial
Loss and Injury ...................................... 7

2. Unjust Enrichment ................................. 9

3. Collateral Estoppel .............................. 10

**POINT II**
DEFENDANT MISCHARACTERIZES THE BASIS OF PLAINTIFF'S
CLAIMS AS A THIRD PARTY BENEFICIARY ..................... 12

**POINT III**
THIS CASE IS NOT PREDICATED ON CONTINENTAL'S VIOLATION OF
N.J.S.A. 17:29b-1 et.seq., BUT RATHER IS PREDICATED ON THE
FINDINGS OF THE SUPERIOR COURT WHICH HAS ALREADY DETERMNINED
THAT CONTINENTAL BREACHED ITS DUTY ...................... 16

**CONCLUSION** ................................................ 17

{00506305.DOC}                    i

## TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

<u>Amtrak v. Pa PUC</u>,
   288 F.3d 519 (2002) ...................................... 11

<u>Associates Commerical Corp., v. Wallia</u>,
   211 N.J. Super. 231 (App. Div. 1986) ..................... 9

<u>Bacak v. Hogya</u>,
   4 N.J. 417 (1950) ....................................... 15

<u>Bell Atlantic Corp. v. Twombly</u>,
   127 S. Ct. 1955 (2007) ................................... 6

<u>Borough of Brooklawn v. Brooklawn Housing Corp.</u>,
   11 A. 2d 83 (N.J. Err & App. 1940) ...................... 13

<u>Carter-Lincoln Mercury Inc. v. Emar Group, Inc.</u>,
   135 N.J. 182 (1994) ...................................... 8

<u>Donnelly v. Capodici</u>,
   227 N.J. Super. 310 (Ch. Div. 1987) ...................... 9

<u>Erickson v. Pardus</u>,
   127 S. Ct. 2197 (2007) ................................... 6

<u>Eschle v. Eastern Freight Ways, Inc.</u>
   128 N.J. Super. 299 (Law Div. 1974) ...................... 7

<u>Gold Mills, Inc. v. Orbit Processing Corp.</u>,
   121 N.J. Super. 370, (1972) ............................. 15

<u>Grant v. Coca-Cola Bottling Co. of New York, Inc.</u>,
   780 F. Supp., 246 (D.N.J. 1991) ........................ 13

<u>Halpert & Co., Inc. v. Jeffrey Matthews Fin. Group, LLC</u>,
   254 B.R. 104 (D.N.J. 1999) ............................... 6

<u>H. Rosenblum, Inc. v. Adler</u>,
   93 N.J. 324 (1983) ...................................... 15

<u>Hawksbill Sea Turtle v. Federal Emergency
Management Agency</u>,
   37 V.I. 526, 126 F. 3d 461 (1997) ...................... 10

Henglein v. Colt Indus. Operating Corp.,
    260 F. 3d 201. 1995) ........................................ 10

Highlands Insurance Co. v. PRG Brokerage, Inc.,
    2004 WL 35439*1 (S.D.N.Y. 2004) .......................... 14

H & M International Transportation, Inc. v.
Continental Casualty Company,
    Docket No. HUD-L-1513-07 ............................... 1,3

Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,
    458 F. 3d. 244 (3rd Cir. 2006) ...................... 10,11

Marvin Safe Co. v. Ward,
    46 N.J.L. 19 (Sup. Ct. 1884) ............................ 15

Parkway Ins. Co. v. New Jersey Neck & Back,
    748 A. 2d 1221 (N.J. Super. Law. Div. 1998) ............. 13

Raytech Corp. v. White,
    54 F.3d 187 (1995) ...................................... 10

Retail Clerks Welfare Fund, Local No. 1049,
AFL-CIO v. Continental Gas. Co.,
    71 N.J. Super. 221 (App. Div. 1962) ..................... 17

Rider Communities, Inc. v. Township of North Brunswick,
    546 A.2d 563 (N.J. Super. App. Div. 1988) ............... 13

Scheuer v. Rhodes,
    416 U.S. 232 (1974) ...................................... 6

Seborowski v. Pittsburg Press Co.,
    188 F.3d 163 (1999) ..................................... 11

Sunset Fin. Res., Inc. v. Redevelopment Group V, LLC,
    417 F. Supp. 2d 632 (D.N.J. 2006) ...................... 6,7

Szehinskyj v. AG of the United States,
    432 F.3d 253 (2005) ..................................... 10

VRG Corp. v. GKN Realty Corp.,
    135 N.J. 539 (1994) ...................................... 9

Walker v. Atlantic Chrysler Plymouth, et al.,
    216 N.J. Super. 255 (1987) ............................... 7

Statutes

28 U.S.C. Section 1441 ....................................... 5

28 U.S.C.S. Section 1738 ....................................... 2

N.J.S.A. 17:29B-1 ......................................... 16,17

Rules

Rule 12(b)(6) ................................................ 6

Federal Rule of Civil Procedure 8(a)(2) ...................... 6

Federal Rule of Civil Procedure 9(b) ......................... 7

## PRELIMINARY STATEMENT

This brief is submitted on behalf of Plaintiff, Emar Group, Inc. (hereinafter "Plaintiff" or "Emar") in opposition to Defendant's Motion to Dismiss.  This Amended Complaint asserts a claim against the Defendant Continental Casualty Company (hereinafter "Defendant" or "Continental") arising from a Judgment entered against it in the Superior Court of New Jersey, Law Division, Hudson County, in a case entitled H & M International Transportation Inc. v. Continental Casualty Company, Docket Number HUD-L-1513-07.

In that case, the Superior Court held that Continental improperly relied upon an exclusion in an insurance policy to deny coverage to H & M International Transportation Inc. when an injured employee, Edward L. Modica, filed a suit for damages.  When Continental disclaimed its duty to provide coverage, Emar, as the insurance broker was liable to provide coverage to H & M.  In order to settle a potential lawsuit by H & M to provide coverage to the injured employee, Emar paid One Hundred and Fifty Thousand Dollars ($150,000.00).  As an insurance broker, had Emar actually not obtained the appropriate insurance coverage for H & M, Emar would have been legally responsible for the payment to the injured employee.  Since the Superior Court determined that Continental was legally required to have provided coverage, Emar should never have been in the position to be responsible to provide insurance

coverage to the employee, and would not have been required to pay to settle the claim.

Thus, the instant matter is not about Emar seeking to accrue an affirmative or profit benefit as a third party beneficiary. Rather, Emar is simply seeking to be made whole and be recompensed for its monetary contribution towards a settlement which rightfully was Continental's sole burden to pay. The fundamental issue is that Continental should not be permitted to be unjustly enriched by its unlawful refusal to provide coverage to H & M.

This case raises the issue of the application of 28 U.S.C.S. Section 1738 requiring federal courts to give full faith and credit to judicial proceedings conducted in state courts where the issues of fact and law determined by the state court are essential and conclusive to the state court judgment entered. Here, the state court determined that Continental breached its insurance contract by its wrongful denial of coverage of the Modica claim, and that Continental's reliance on an exclusion contained in the policy is misplaced, as the exclusion is ambiguous at best, and did not apply to the Modica claim.

The determinations of fact and law made by the state court are the essential element supporting the judgment entered. Continental chose not to appeal the judgment to the Appellate Division of the New Jersey Superior Court and the time for such appeal has expired. Instead, it seeks through removal jurisdiction on diversity grounds, to collaterally attack the state court judgment.

## STATEMENT OF FACTS

In H & M International Transportation Inc v Continental Casualty Company Docket Number HUD-L-1513-07, H & M International Transportation Inc. (hereinafter referred to as "H & M") sued Continental Casualty Company under an insurance policy (hereinafter "the policy") that H & M had procured through its insurance agent, Emar Group Inc. from Continental. Subsequently, H & M sued Continental because Continental denied coverage under the Policy for a Third Party suit brought by one Edward L. Modica, who alleged that he had suffered bodily injury as a proximate result of the negligence of H & M's employees (hereinafter "the Modica claim"). Continental disclaimed coverage under the Policy for the Modica claim, apparently in reliance on an exclusionary provision of the subject policy. Continental argued before the Superior Court of New Jersey that the policy exclusion precluded H & M's recovery against it under the policy. Extensive discovery was taken by the parties in the Superior Court case over many months.

At the close of discovery the parties proceeded before the Superior Court to file cross motions for summary judgment. The motions were heard by the Superior Court Law Division on October 10, 2008, which ruled against Continental, holding that the exclusion relied upon by Continental to deny coverage under the Policy was ambiguous, that Continental had breached the insurance contract by failing to provide coverage for the Modica claim, and that Continental was required to satisfy H & M's damage claim

{00506305.DOC}                                3

against Continental for the loss H & M sustained to resolve the Modica claim.

A copy of the transcript of the Superior Court's ruling finding that the exclusion Continental relied upon as a basis to preclude coverage was ambiguous, that Continental had breached the insurance contract, and that Continental was required to provide coverage under the subject policy are attached hereto as Exhibit **A**.

Plaintiff Emar brings this action against Continental to recover the sum of $150,000.00 plus interests and costs that Emar contributed to the Modica settlement at the demand of H & M, when H & M threatened suit against Emar as a consequence of Continental's wrongful denial of the Modica claim. Emar alleges in its complaint that Emar is a third party beneficiary, and/or third party contract beneficiary of the Modica settlement and the Continental Policy issued to H & M. But for Continental's wrongful breach of the insurance contract with H & M, Emar would not have been required to contribute to the Modica settlement.

Further, as a consequence of Emar's contribution payment to the Modica settlement, Continental has been unjustly enriched, because the funds paid by Emar should have rightfully been paid by Continental. Continental cannot be rewarded for its breach of contract and/or negligence in improperly applying the Policy terms to the Modica suit and denying coverage where coverage should have been provided as determined by the New Jersey Superior Court.

Emar commenced this civil suit before the Superior Court Law Division. After service of process was affected upon Continental, Continental removed the case to the United States District Court pursuant to 28 U.S.C. §1441.

## LEGAL ARGUMENT

### POINT I

**DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

On a motion to dismiss for failure to state a claim, the court must view the complaint's allegations in the light most favorable to the plaintiff and accept any and all reasonable inferences arising therefrom. Sunset Fin. Res., Inc. v. Redevelopment Group V, LLC, 417 F.Supp.2d 632, 642 (D.N.J. 2006); Halpert & Co., Inc. v. Jeffrey Matthews Fin. Group, LLC, 254 B.R. 104, 113 (D.N.J. 1999); Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint). "Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Moreover, a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Specific facts are not necessary. Erickson, 127 S.Ct. at 2200. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, so as to give the defendant fair notice of the claim and its grounds. Bell, 127 S.Ct. at 1964; Erickson, 127 S.Ct. at 2200 (Supreme Court reversed

District Court's dismissal of claim which was based on District Court's determination that allegations were too conclusory).

Accordingly, the motion must be denied unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Sunset, 417 F.Supp.2d at 642. The crux of Defendant's argument is that Emar is not a third party beneficiary and thus should be barred from recovery; however Plaintiff has set forth various basis for which Continental should be liable to compensate Emar including breach of contract, concealment, collateral estoppel, unjust enrichment and negligence. Because Plaintiff herein set forth the fundamentals of a cause of action its Complaint should not be dismissed.

**A.** **Plaintiff States Various Claims Cognizable Under the Law.a Claim and Do So with Sufficient Particularity under Fed. R. Civ. P. 9(b).**

**1. As a Direct and Proximate Result of Continental's Breach of Contract By Refusal To Pay the Modica Claim, Emar Suffered Significant Financial Loss and Injury.**

Case law is clear that if an insurance broker fails to obtain the proper insurance coverage, the broker can be held liable for an ensuing claim. See Eschle v. Eastern Freight Ways, Inc., 128 N.J. Super. 299 at 306 (Law Div. 1974) (holding that an insurance agent is liable to the potential insured for the failure to obtain the requested coverage); see also Walker v. Atlantic Chrysler Plymouth et. al., 216 N.J. Super. 255 (1987) (holding that a jury had the

right to determine whether the agent had failed to fulfill its duty to the principal and thereby caused direct damage to a foreseeable beneficiary); see also Carter-Lincoln Mercury Inc. v Emar Group Inc., 135 NJ 182 (1994) (holding that an insurance broker was liable to a third party where the policy did not afford coverage where the insurer became insolvent).  If, as originally claimed by Continental, the Policy did not provide coverage for the Modica claim, Emar would have been liable to provide coverage for the claim.  Thus, as a direct result of Continental's breach of contract and Continental's refusal to provide coverage for the Modica claim, Emar was placed in the position of facing litigation with respect to the underlying Modica claim, when, in fact, Emar had procured the necessary insurance through Continental.  Thus, Continental's actions were the direct and proximate cause of Emar's financial loss.

Contrary to Defendant's assertion that Emar is not entitled to recompense as a matter of law, once Continental wrongfully disclaimed coverage, Emar would be liable for not procuring adequate insurance coverage on behalf of H & M.  Thus, Emar was a foreseeable injured party should coverage to H&M be denied. Continental's unlawful refusal to provide insurance coverage to H & M was the direct and proximate cause of Emar's liability for the Modica claim and the reason that Emar entered into settlement negotiations which ultimately led to payment of $150,000.00.  Since

{00506305.DOC}                        8

Continental's breach of contract was the direct and proximate cause of Emar's payment, the Motion to Dismiss must be denied.

### 2. Unjust Enrichment

To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." See VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).  The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights. Associates Commercial Corp., v. Wallia, 211 N.J.Super. 231, 243-244 (App.Div.1986); see also Donnelly v. Capodici, 227 N.J.Super. 310, 313 (Ch.Div.1987) (noting that because "[e]quity should not permit unjust enrichment," an equitable lien should be imposed on behalf of seller for enhanced value of real property improvements in partition action).

At its core, this action is a straightforward case of Continental seeking to benefit from Emar's payment of Continental's obligations.  Continental no longer has to pay for the Modica claim; however, the claim was only settled by Emar due to Continental's wrongful refusal to provide coverage.  At all times, Emar believed that it had procured appropriate coverage for H & M and expected Continental to provide coverage.  Only when faced with litigation from H & M, did Emar have to choose between incurring

significant legal fees or pay the settlement.  Continental should not benefit from Emar's loss since the loss was due solely to Continental's unlawful refusal to provide coverage and would result in Continental's unjust enrichment of Emar's exposure.

Continental has clearly enjoyed the benefit of Emar having reached a settlement on the Modica claim.  The Superior Court found that Continental was legally obligated to provide coverage for the Modica claim.  Yet, the claim was settled by Emar specifically because Continental wrongfully disclaimed coverage.  Continental's position that it should not be required to make Emar whole results in Continental being unjustly enriched by its failure to provide insurance coverage for the Modica claim.  Thus, the Motion to Dismiss must be denied.

### 3.   Collateral Estoppel

In Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244 (3rd Cir. 2006), the Court of Appeals for the Third Circuit reiterated the four standard requirements for the application of collateral estoppel:   (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.'"   Henglein v. Colt Indus. Operating Corp., 260 F.3d 201 at 209 (quoting Raytech Corp. v. White, 54 F.3d 187 (1995) at 190); see also Szehinskyj v. AG of the United States, 432 F.3d 253 (2005) at 255; Hawksbill Sea Turtle v. Federal Emergency

Management Agency, 37 V.I. 526, 126 F.3d 461, 475 (1997).  Jean
Alexander at 249.  The Court must also consider whether the party
being precluded "had a full and fair opportunity to litigate the
issue in question in the prior action," Seborowski v. Pittsburg
Press Co., 188 F.3d, 163 (1999) at 169, and whether the issue was
determined by a final and valid judgment, AMTRAK v. Pa PUC, 288
F.3d 519 (2002) at 525.

It is submitted that this case meets that these standards as
evidenced by the findings of the Superior Court on H & M and
Continental's cross motions for summary judgment and the entry of
Judgment against Continental.  The issue before the Superior Court
framed by the parties on the cross motions was whether Continental
was required to provide coverage to H & M under its insurance
contract and cover the Modica claim.  The Superior Court held in
the affirmative and it is therefore submitted that Continental is
precluded from re-litigating the issue before this Court.  By
disclaiming any duty to Emar, Continental is, in effect, arguing
that it never had an obligation to provide coverage for the Modica
claim.  The factual and legal issues concerning the insurance
contract and coverage of the Modica claim were actually litigated
by H & M and Continental in the Superior Court.  In this case, the
factual and legal issues which determined Continental's legal duty
have been thoroughly reviewed and were considered by the Superior
Court.

Additionally, the legal and factual issues reached by the

Superior Court supporting the Judgment entered were necessary to the decision.   The Court found that Continental was required to provide coverage for the Modica claim, that Continental breached its contract by refusing coverage and that Continental improperly relied upon a policy exclusion as the basis to deny coverage of the Modica claim.   In the present case, the same issues are presented to the Court regarding the Policy and Continental' denial of coverage for the Modica claim and the Superior Court already considered same when reaching its decision.

Finally, Continental is precluded from re-litigating the issue because it was fully represented in the prior action.   Continental was represented in the prior action before the Superior Court by the same attorneys who appear on its behalf in this case. Continental was afforded a full and fair opportunity to litigate the issue raised by the Modica claim in the prior action before the Superior Court Law Division.   Because Continental did not appeal the judgment entered, the Superior Court decision is final and a valid judgment.   All of the factors necessary for a finding of collateral estoppel are found in this case. Thus, the Motion to Dismiss must be denied.

**POINT II**

**DEFENDANT MISCHARACTERIZES THE BASIS OF PLAINTIFF'S CLAIMS AS THIRD PARTY BENEFICIARY.**

Defendant claims that Emar is not appropriately cast as a "third party beneficiary." Defendant's Brief p. 13-15.   Defendant cites to various cases, all of them for the proposition that an

"incidental beneficiary does not equal a third party beneficiary."
*Citing* Rider Communities, Inc. v. Township of North Brunswick, 546
A.2d 563 (N.J.Super. App. Div. 1988); Grant v. Coca-Cola Bottling
Co. of New York, Inc., 780 F.Supp, 246 (D.N.J. 1991), Borough of
Brooklawn v. Brooklawn Housing Corp., 11 A.2d 83 (N.J. Err & App.
1940) and Parkway Ins. Co. v. New Jersey Neck & Back, 748 A.2d 1221
(N.J. Super. Law. Div. 1998). Defendant's Brief p. 14. The cases
cited by Defendant are entirely inapplicable to the status claimed
by Emar in the Second Count of the Amended Complaint. All of the
cases cited by Defendant involve parties seeking profit, benefits
or enforcement of a contract. Emar's claim to third party
beneficiary status is not to enforce the contract, but rather to be
compensated as an injured party due to Continental's
"unconscionable" acts and omissions, negligence and/or breach of
contract and breach of the covenant of fair dealing and good faith"
See Amended Complaint, Second Count, Para. 3. Thus, Emar is not
seeking to profit, benefit or enforce terms of the actual insurance
contract. Rather, Emar seeks to be recompensed as a victim of
Continental's unlawful breach of contract as a result of
Continental's wrongful denial of the Modica claim.

In fact, Defendant's attempt to position Emar as seeking to
enforce a contract as a third party beneficiary or to accrue an
affirmative benefit is exactly opposite to Emar's claim. Stated
differently, this case is not about Emar looking to benefit from
Continental as a third party beneficiary, or to enforce the terms

of a contract.  Rather, Emar appropriately relied upon Continental to perform a service.  Continental's unlawful refusal to provide coverage to H & M for the Modica claim directly led to Emar facing litigation due to Continental's unlawful denial of coverage. Emar's contribution was anything but a "voluntary contribution" as categorized by Defendant.  See Defendant's Brief, page 13.  Emar was forced to settle a matter or incur significant legal fees.  But for Continental's unlawful position with respect to the Modica claim, Emar would not have faced litigation.  Defendant seeks to frame this issue as a question of Emar's status as a "third party beneficiary," the real question is: why should Continental benefit by its unlawful denial of a claim which placed Emar in the position of being legally liable for the insurance claim.

Defendant cites to <u>Highlands Insurance Co. v. PRG Brokerage Inc.</u> 2004 WL 35439*1 (S.D.N.Y. 2004) to bolster its contention that unintended third party beneficiaries have no standing.  In that case, among the various counts, Plaintiff brokers sought brokerage fees.  The Court held that Plaintiffs were not intended third party beneficiaries and thus could not seek enforcement of the contract and collect their brokerage fees. Again, the claim in the instant case is not to enforce a contract to claim an affirmative benefit or profit.  The issue in this case is whether Emar, as an insurance broker, has the right to pursue compensation from an insurance provider who unlawfully denies coverage to an insured, thereby imputing liability onto the broker.

Further, Emar does not need to be in privity of contract with Continental to pursue these claims. "Regardless of lack of privity, it is clear that if a contractor does something affirmative in a negligent manner which causes damage to a third party, he is liable for the resulting damage." Gold Mills, Inc. v. Orbit Processing Corp., 121 N.J. Super. 370, 374 (1972) citing Bacak v. Hogya, 4 N.J. 417 (1950); Marvin Safe Co. v. Ward, 46 N.J.L. 19 (Sup. Ct. 1884). As the Court in Gold Mills said:

> I also can fathom no reason why the privity rule or the dichotomy between misfeasance and nonfeasance should control in the area of liability of an independent contractor to a third party. See Seavey, "Reliance on Gratuitous Promises," 64 Harv. L. Rev. 913, 916. Such liability should exist when the contractor has undertaken performance, whether his negligent performance results from the doing of something which a reasonably prudent person would not have done or from the failure to do something which a reasonably prudent person would have done...

Id. at 375-376. See also H. Rosenblum, Inc. v. Adler, 93 N.J. 324 (1983) (holding that lack of privity does not bar the liability of an independent contractor engaged to perform services for his negligent nonfeasance.) In this case, Continental was required to have provided coverage for the Modica claim and the lack of privity between Emar and Continental is not a bar to Emar looking to Continental to compensate Emar for their payment to settle the Modica claim. Continental's malfeasance gave rise to Emar's liability in the Modica claim. As such, Emar may look to Continental to be recompensed.

Defendant mischaracterizes Emar's position that it is seeking a finding that "every time an insurance company issues a policy, the broker who procures the policy would be a third party beneficiary to the policy and have standing to sue to enforce its terms." Defendant's Brief, page 14. Emar is not seeking to enforce the terms of the contract. Continental's malfeasance has already been determined by the Superior Court and enforcement of the terms would be left to H & M, if applicable. Contrary to Defendant's assertion, Emar is seeking a finding that when a broker suffers financial loss due to an insurance company's unlawful denial of coverage, said broker is entitled to relief once the malfeasance has been judicially determined. Emar is not seeking enforcement of the terms of the contract, Emar is seeking recompense as a third party injured by Continental's wrongful denial of coverage for the Modica claim. As there are sufficient questions of fact and law to be determined, the Motion to Dismiss must be denied.

<u>**POINT III**</u>

**THIS CASE IS NOT PREDICATED ON CONTINENTAL'S VIOLATIONS OF <u>N.J.S.A.</u> 17:29B-1 et. seq., BUT RATHER IS PREDICATED ON THE FINDINGS OF THE SUPERIOR COURT WHICH HAS ALREADY DETERMINED THAT CONTINENTAL BREACHED ITS DUTY.**

In the Fifth Count of the Amended Complaint, Emar charges that Continentals' breach of <u>N.J.S.A.</u> 17:29B-1 et. seq. prohibiting "unfair or deceptive acts or practices" was the proximate cause of Emar's settlement of the Modica claim. Defendant claims that

{00506305.DOC}                             16

N.J.S.A. 17:29B-1 does not create a "private right of action" *citing* Retail Clerks Welfare Fund, Local No. 1049, AFL-CIO v. Continental Cas. Co., 71 N.J.Super. 221 (App.Div. 1962). In that case, Plaintiffs suit was predicated upon Defendant insurance company's unlawful practices. The Court ruled that N.J.S.A. 17:29B-1 was a penal statute and private claims were not recognized under the statute. Id. at 225. Similarly, Defendant cites case law discussing causes of action solely based upon alleged wrongful practices by insurance providers under N.J.S.A. 17:29B-1.

In this case, N.J.S.A. 17:29B-1 is not the predicate for the claims against Defendant. As stated in the fifth Count of Plaintiff's Amended Complaint, the Superior Court has already "judicially determined by Judgment entered against Continental in …. That continental willfully and wrongfully refused and failed to provide indemnification, coverage and defense to H & M …" See Fifth Count of Plaintiff's Amended Complaint, Para. 4. Here, the Superior Court has already made the determination that Continental's denial of the Modica claim was wrongful and therefore violative of N.J.S.A. 17:29B-1. In this action, based upon the Superior Court's determination that Continental wrongfully denied payment for the Modica claim, Emar merely seeks reimbursement to enforce the Court's findings. This action is not merely brought pursuant to N.J.S.A. 17:29B-1. Rather, this action seeks recompense for monies paid due to Continental's wrongful conduct.

Thus, the Fifth Count of the Amended Complaint cannot be dismissed and the Motion to Dismiss must be denied.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests this Court enter an Order pursuant to Fed. R. Civ. P. 12(b) (6) dismissing Defendant's Motion to Dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully Submitted,

Ferrara and Associates
Attorneys for Plaintiff Emar
Group Inc.

By: Joseph J. Ferrara, Esq.

Date: August 24, 2009

{00506305.DOC}                                 19

# EXHIBIT A

```
 1                          SUPERIOR COURT OF NEW JERSEY
                            HUDSON COUNTY
 2                          LAW DIVISION CIVIL PART
                            DOCKET NO.: HUD-L-1513-07
 3                          A.D. # _____
    H&M INTERNATIONAL       )
 4  TRANSPORTATION, INC.,    )
                            )
 5        Plaintiff,         )
                            )       TRANSCRIPT
 6        vs.                )           OF
                            )        MOTION
 7  AMERICAN HOME ASSURANCE  )
    COMPANY and CONTINENTAL  )
    CASUALTY COMPANY,        )
 8                          )
          Defendants.        )
 9
                      Place: Hudson County Courthouse
10                           595 Newark Avenue
                             Jersey City, New Jersey
11                           07306

12                    Date: October 10, 2008

13  BEFORE:

14      HONORABLE SHIRLEY A TOLENTINO, J.S.C.

15  TRANSCRIPT ORDERED BY:

16      DANIEL PICKETT, ESQ., (Carroll, McNulty & Kull,
        LLC.)

17  APPEARANCES:

18      JOHN B. SOGLIUZZO, ESQ.
        Attorney for Plaintiff
19
        MARGARET CATALANO, ESQ., (Carroll, McNulty & Kull,
20      LLC.)

21

22                      Sheri Monroe
                        KING TRANSCRIPTION SERVICES
23                      FRANK H. ULRICH
                        65 Willowbrook  Boulevard
24                      Wayne, NJ 07470

25                      Audio Recorded
                        Recording Opr:
```

I N D E X                          2

                                      Page

SUMMATION

BY: Ms. Catalano                      3,15

BY: Mr. Sogliuzzo                     7,16


THE COURT

Decision                              17

Argument - Catalano                    3

1          THE COURT:  Counsel, may state your

2    appearances, please.

3          MR. SOGLIUZZO:  Good morning, Your Honor.

4    Your Honor, on behalf of the plaintiff, H&M

5    International, my  name is John Sogliuzzo, S-O-G-L-I-U-

6    Z-Z-O.

7          THE COURT:  Thank you.

8          MS. CATALANO:  Good morning, Your Honor.

9    Margaret Catalano on behalf of Continental Casualty

10   Company.

11         THE COURT:  Yes, and I know this is your

12   motion for summary judgment, so I'll hear you.

13         MS. CATALANO:  Actually, Your Honor, they're

14   cross -- cross-motions.

15         THE COURT:  I know -- I know they're cross-

16   motions.  I know.

17         MS. CATALANO:  But, yes, Your Honor, I was

18   the moving motion for summary judgment.  The -- the

19   present coverage action arises out of an underlying

20   lawsuit initiated by Edward Motica (phonetic).  In

21   which he alleged bodily injury arising out of his work

22   for Union Pacific Railroad.  Work that the plaintiff

23   pleaded in the underlying complaint and which H&M

24   concedes was work subject to FELA.

25         The plaintiff originally sued Union Pacific

Argument - Catalano                    4

1  Railroad and then Union Pacific Railroad, third party

2  with H&M ultimately the pleadings were amended so that

3  H&M was added as a direct defendant in that underlying

4  action.

5       Continental Casualty disclaimed coverage for

6  the underlying action to H&M on the basis of the FELA

7  exclusion, which reads, this policy does exclude bodily

8  injury, property damage, advertising injury and

9  personal injury as a result of a any work subject to

10  FELA.

11       In looking at the exclusion and applying it

12  to the specific facts of this case, there are some

13  guiding principles of insurance coverage construction

14  that we gleamed from New Jersey Supreme Court precedent

15  and other cases.  And those generally state that New

16  Jersey law requires that in interpreting an insurance

17  police a court may not ignore its clear and certain

18  terms.  That where a policy is clear and unambiguous,

19  the language used binds the parties and the court must

20  give it affect.

21       And where the policy is clear and

22  unambiguous, it is the function of a court to enforce

23  the police as written and not to make a better contract

24  for either of the parties.

25       And using those guiding principles and

Argument – Catalano                    5

1   looking at the exclusion here at issue, it is clear

2   that the exclusion bars coverage for bodily injury as a

3   result of any work subject to FELA.  The emphasis on

4   the exclusion is on the injured party, not on the

5   defendant, as H&M would have this Court believe.  Or as

6   we contend, as H&M would have this Court rewrite the

7   exclusion.

8          H&M contends that the exclusion should apply

9   if the plaintiff suffers bodily injury only if H&M was

10  doing work subject to FELA.  And it is our contention

11  in this case that such a construction forces the Court

12  to rewrite the policy.  It would force the Court to

13  ignore the word any or delete the word any from the

14  exclusion and add the words work that H&M is doing

15  subject to FELA.

16         And as such we feel that's contrary,

17  obviously, to the guiding principles of insurance

18  construction.  And it further renders what already is

19  contained in the policy, the workers comp and the

20  employers liability exclusion, superfluous.

21         And again, looking to case law precedent to

22  instruct the application of the interpretation of this

23  exclusion.  We refer the Court to the Prather

24  (phonetic) case and "that in construing an insurance

25  contract as in the construction of other contracts, the

Argument - Catalano                                    6

1    elemental rule of construction is to determine the

2    intention of the parties as demonstrated by the

3    language employed when read and considered as a whole."

4    Effective possible will be given to all parts of the

5    instrument and the construction which gives a

6    reasonable meaning to all its provisions, will be

7    preferred to one which leaves a portion useless or

8    inexplicable.

9         And here, if we were to read the exclusion as

10   narrowly as H&M contends it should be read, you're

11   basically obliterating or ignoring what is already

12   there by way of the employers liability exclusion and

13   therefore rendering that exclusion superfluous in the

14   insurance policy.

15        H&M and I'm sure we will hear this in

16   response to this argueous or sounds about -- of

17   ambiguity or reasonable expectations.  Again, it is our

18   position that the language is not susceptible to more

19   than two meanings.  It is clear and unambiguous and --

20   and further that H&M has really not come forward even

21   if they were to establish an ambiguity with any

22   evidence as to why it's reasonable expectations would

23   have been such as to merely construe that exclusion and

24   read out the other employers liability exclusion.

25        And on that basis, Your Honor, we have moved

Argument - Sogliuzzo                    7

1   then for summary judgment.  Thank you.

2           THE COURT:  Thank you.  Yes, Mr. Sogliuzzo.

3           MR. SOGLIUZZO:  We certainly have a dispute

4   here, Judge, on the interpretation of that -- of that

5   exclusion, Judge.

6           THE COURT:  Yes.

7           MR. SOGLIUZZO:  Even as Continental, Your

8   Honor, has indicated, they seem -- I think we have to

9   step back Judge and talk about how the suit occurred.

10          Mr. Motica started a lawsuit against his

11  employer, i.e. Union Pacific.  At that time, Your

12  Honor, was three prong complaint that he filed.  He

13  filed it under the FELA, it was a boiler inspection,

14  Judge, and -- in Arkansas -- in Missouri, excuse me, in

15  Missouri, the claim arose out in Arkansas.

16          However, Judge, then what occurs and I think

17  that's what the point that Continental is missing.

18  Motica amends his complaint to bring as a direct

19  defendant in that suit, H&M.  And in that action,

20  Judge, in naming H&M, he pleads none of those three

21  actions against H&M.  Why?  Because it's not

22  applicable, Judge.

23          What he pleads is negligence.  Simple, clear

24  negligence that in essence the employees of H&M did

25  something carelessly, negligently causing him to be

Argument - Sogliuzzo                    8

1   harmed.  Now, Judge, that's -- that's the claim.  We

2   just look at that based on the claim.

3          So, then we go now and look at the policy.

4   There's not question, Judge, as I think Your Honor

5   readily and as I indicated in our initial brief, there

6   is coverage under the excess policy for that negligence

7   count against H&M.

8          Now, Continental then comes forward and says,

9   well wait a second, there's coverage, but there's an

10  exclusion.  And that exclusion says that FELA, the

11  Federal Employees Liability Act is excluded under the

12  policy.  And they have -- they and please it's not

13  personal by any stretch of the imagination,

14  Continental.  Continental has the burden of proof that

15  that exclusion is applicable.

16         Your Honor, even the case that they cite in

17  reference to FELA, Iverson (phonetic), says that

18  there's no way that you can interpret that exclusion as

19  to H&M.  Because in Iverson, which is cited and

20  establishes what FELA means, says the following, Your

21  Honor.  And this one portion is cited by Continental in

22  their brief, but not the second portion of the

23  statement.

24         It says in Iverson, Your Honor, and I believe

25  it is -- and I'll cite the citation for Iverson, Your

Argument - Sogliuzzo                    9

1   Honor.  Iverson is 62 F.3d 259 and specifically I'm

2   quoting a portion that's on 261.  And that is an eighth

3   circuit decision that was rendered in 1995, Your Honor.

4   And I cite that because that is exactly what

5   Continental cites in its brief in terms of the

6   applicability of FELA.

7           FELA says that -- Iverson's Court says the

8   following, the statute imposes broad liability on

9   railroads to provide compensation for on the job

10  injuries sustained by their employees.  It then goes on

11  the say this, Judge and I think this is key, but its

12  application is explicitly limited to railroads that

13  function as common carriers.

14          That's why Mr. Motica -- because, Your Honor,

15  to be quite honest with you, we look at the FELA, FELA

16  is much broader than workers comp.  As a matter of

17  fact, you can't -- you don't bring a workers comp

18  action against the railroad if you're the employee.

19  You bring in on the Federal Liability Act.  And -- and

20  the reason why you do that is, it's a very liberal

21  statute.  It gives you much better benefits that you'd

22  ever get under a workers comp case, Your Honor.

23          And I think the Court can take recognition of

24  that based on the reading of the FELA statute.  So, we

25  know, Judge, by -- that FELA only applies to the

1  railroad employee relationship to its employees.  Now,

2  Continental says, well what is the reasonable

3  expectation of my client?  Well, my client knows the

4  FELA statute only applies to railroads.

5           And the reasonable expectation is that, that

6  can't possibly apply to H&M who is not a railroad at

7  the time and we'll get into that because it's cited

8  later on, Judge, but not a railroad and not the

9  employer to Mr. Motica.

10           If Mr. Motica, Judge, had a FELA action

11  against H&M, he would have played that out, Judge.  He

12  didn't.  He had a very simple negligence count against

13  them, Judge.  There's coverage in the policy.

14           Now, Your Honor, Continental then argues and

15  it's quite clear, Motica's files to negligence, nothing

16  else, Judge.  And then we go -- there's certainly --

17  and I cite them in our brief, Judge, and I'll highlight

18  some cases as I'm doing my oral presentation to the

19  Court.

20           Your Honor, determination is a matter of law

21  and Your Honor is going to be making this decision.

22  Your Honor, the Courts are directed to take broad,

23  liberal views of the policy construed in favor of the

24  insured.

25           I'm relying specifically in that context,

Argument - Sogliuzzo                    11

1  Judge, on <u>S.T. Hudson v. National Mutual Casualty</u>, 388

2  NJ Super., 592, it's an Appellate Division case

3  rendered 2006 and the Supreme Court in 2007 denied

4  certification of that, Judge.

5         So, we know we have to take a -- a liberal

6  interpretation of that.  Looking on the face of that

7  exclusion, Judge, looking on that, my client would have

8  to think that it never applied to him -- to it, excuse

9  me, because it was not subject to FELA.  It was not in

10  the relationship between H&M and Motica.

11         Then goes on, Judge, to say -- that is I've

12  indicated before and going to <u>Hartford Accident</u>

13  <u>Indemnity v. Aetna</u>, 98 NJ 18, 1984.  The burden is on

14  Continental to establish the applicability of that --

15  that exclusion.

16         Now, Judge, Ms. Catalano there's nothing --

17  there's no secrets here, Ms. Catalano noted based on my

18  brief that clearly there -- there -- even if -- as we

19  stand in front of the Court and as we write in our

20  briefs, there are two distinct outcomes or

21  interpretations of this clause.

22         Continental says one, H&M says the other.  If

23  we have that, Your Honor, we clearly at the very least,

24  Your Honor, have an ambiguity in that policy.  And the

25  Courts are very clear that if there is an ambiguity, it

1   must adhere to the benefit of the insured.  And the

2   Court then goes on to say, Judge, and this is in -- I

3   think it's in Mazzilli, 35 NJ 1, 1961, but it's also at

4   Progressive Casualty Insurance, 166 NJ 260, 2001 case.

5   That if there is two distinct outcomes as to whether

6   there's coverage, the subject language must be

7   interpreted in favor of the insured.

8            Now, the argument really then that

9   Continental makes, Your Honor, is that well, if you

10  take H&Ms interpretation, it's superfluous because H&M

11  knew that they were never subject to FELA.  And they

12  offered to the Court, which I had to step back and say,

13  wait a second, you walk into a court, a decision or a

14  reconsideration of a decision for 2004, first of all,

15  it wasn't documented in discovery and I think that was

16  just -- should have been supplied, it wasn't -- I

17  relayed that to the Court.

18           But, let's go back to see what we did have in

19  discovery, which was -- which I offered to the Court

20  in my reply and I appreciate the Court in accepting

21  that reply because I had to -- I had to highlight it, I

22  didn't want the Court to be misled.  And not that

23  counsel was doing that intentionally, but I wanted the

24  Court to be -- not to be misled.

25           In January of 2002, now we know the policy

1  period, Judge, is an '01 to '02, so during the policy

2  period there is a determination by the railroad -- the

3  railroad retirement, that made a determination on

4  January 22nd, 2002, that H&M is a carrier, operating an

5  interstate commerce by reason of the switching

6  operations, which is was performing in Marion, Arkansas

7  terminal.

8          Arguably, Judge, and again -- arguably, if,

9  in fact, one of H&Ms employees had been injured during

10  that policy period and turned around and sued H&M,

11  under the FELA liability -- under FELA, Federal

12  Employees Liability Act, I would say and I think the

13  Court would agree with me that that exclusion in the

14  excess policy excludes coverage for that claim by H&M

15  employee against H&M.

16          And why would the Court make that ruling?

17  Because FELA applies to railroad employers as to their

18  employees.  So, it was not superfluous, Judge, at all

19  that during the policy period, potentially,

20  potentially, H&M could have been subject to a claim

21  under the FELA statute.

22          So, to say that if you take the

23  interpretation of H&M somehow I makes that -- that --

24  that policy and that exclusion of no moment whatsoever

25  is not the case whatsoever.

Argument - Sogliuzzo                    14

1       That, in fact, H&M, potentially, Your Honor,
2  could have been subject to a claim under the FELA
3  statute by one of their employees if they had been
4  injured at the switching operations in Marion,
5  Arkansas.
6       So, do I know why Continental had that put in
7  the policy?  No.  But, I'm assuming that some
8  underwriting said that doing these operations down in
9  Arkansas, we're going to put the FELA in, so we're not
10  -- don't have that.
11       But, we can't miss the point, Judge, that Mr.
12  Motica's claim is not FELA, it's negligence.  Simple,
13  pure negligence and, Your Honor, that's the point.  So,
14  that there is coverage, we've established coverage.
15  And I do, as I said in my reply, Judge, if we're
16  standing here before the Court, as we are, and we have
17  two very distinct interpretations, that I submit that
18  we have a dispute and it's arguable, then the Court
19  must based on the case law that I have offered to the
20  Court, must come down in favor of H&M in terms of our
21  motion for partial summary judgment.
22       And I say partial summary judgment just
23  because, clearly, if Your Honor rules in our favor then
24  there is an issue of damages that we may be able to
25  resolve.

1      THE COURT:  Thank you.

2      MR. SOGLIUZZO:  Thank you, Judge.

3      MS. CATALANO:  Your Honor, if I could just

4  respond to that.  There is also ample case law that

5  goes to what does constitute an ambiguity.  And the

6  fact that two counsel may have construed an argument

7  does not, in fact, create an ambiguity at all.

8          The Court needs to look to the clear language

9  of the exclusion and the only way you create an

10 ambiguity is by adding words to the exclusion that

11 simply don't exist.

12         What was intended by that exclusion was to

13 bar any claims arising out of FELA and that's why it

14 had bodily injury or property damage as a result of any

15 work subject to FELA.  It was not limited to any work

16 by H&M, subject to FELA.  Such a construction adds word

17 to the exclusion and going to the point, in terms of

18 the scenario that counsel has advanced in terms of

19 well, if, in fact, H&M had been subject to FELA, that's

20 why the exclusion would have been put in the policy.

21 The policy had already contains an employer liability

22 exclusion for any employee claim.  It doesn't have to

23 so narrow as to be a FELA.  So, again, there would have

24 been no need for the addition of that exclusion if you

25 read it as -- or rewrite it as the way H&M contends.

Argument - Sogliuzzo                16

1   Thank you, Your Honor.

2              THE COURT:  Thank you.  You have one last

3   word.

4              MR. SOGLIUZZO:  Very shortly and I will offer

5   to the Court, because I do have it and I apologize, I

6   should have probably included it in my brief.  The New

7   Jersey Supreme Court, Your Honor, has indicated to what

8   is an ambiguity and the language is as follows and I'm

9   citing from Weedow (phonetic) and also from Simonetti

10  (phonetic) and I apologize to the Court, I don't have

11  them readily available as citations.

12             But, the New Jersey Supreme Court has

13  described and ambiguity as following, it arises "where

14  the phrasing of the policy is so confusing that the

15  average policy holder cannot make out the boundaries of

16  coverage."  That's exactly what we have here, Judge.

17  That's exactly what we have here.

18             That there's -- you -- if you're taking that

19  position, I don't know the boundaries of the coverage.

20  We look at FELA and say it doesn't apply to us.  How

21  then can I -- I think that that exclusion is going to

22  be applicable if, in fact, someone, not employees of

23  ours sues us for simple negligence.

24             So, I offer that to the Court, Judge.  I

25  clearly think that there is, at the very least, before

The Court - Decision          17

1   the Court, ambiguity of that exclusion and therefore it

2   goes to benefit of the insured.

3          THE COURT:  Thank you.  The Court has

4   carefully considered the, certainly, the remarks of

5   counsel, the arguments, the submissions, the law that

6   was submitted by counsel with respect to these motions.

7          And I will begin with Mr. Sogliuzzo's last

8   statement with respect to the definition of ambiguity

9   as interpreted by the Supreme Court case that he cited.

10  And I would say that is certainly correct.  And I have

11  to be guided by it, of course.

12          In this particular case, we know that H&Ms

13  argument is that this claim is -- is not barred under

14  the policy and that where a policy does have ambiguity

15  and I -- and I find that with respect to these very

16  poignant arguments here, that there is ambiguity with

17  respect to this clause in the policy.  The outcome,

18  therefore, must be most favorable to the insured.

19          I do find, also, that Mr. Motica's claim was

20  for negligence, outside of the FELA act and that FELA

21  is not barred -- is not applicable, is what I mean.

22          Of course, I do accept that the adversary's

23  case states that we must really view this statute in a

24  broad and liberal sense.  And therefore, I say that H&M

25  at the time of the argument that the claim was one of

The Court - Decision                    18

1   negligence outside of these other statutes, is correct.

2   And therefore, that the -- the bar or the argument of

3   Continental Casualty, that the FELA statute bars the

4   claim is not sound.

5           And so the Court, therefore, based on all

6   that has been presented to me with respect to the

7   different positions here, I say that though the

8   arguments have been most -- and also I see a great deal

9   of time and effort has gone into the presentation of

10  these arguments, I am, nevertheless, persuaded that the

11  summary judgment here must be denied as to Continental

12  Casualty.  And I am going to grant for the reasons

13  stated, the partial summary judgment motion of H&M.

14          And I will adopt most of the arguments of H&M

15  or counsel for H&M as the Court's own reasons and facts

16  with respect to this particular motion and I'm going to

17  sign the order now.

18          MR. SOGLIUZZO:  Judge, I believe my office

19  did submit an appropriate order to the Court.

20          THE COURT:  I have an order --

21          MR. SOGLIUZZO:  I just submitted one, Judge.

22  I have one here.

23          THE COURT:  I have it.

24          MR. SOGLIUZZO:  Absolutely.  I'm must

25  offering it to counsel, Judge, to see if there's any --

The Court - Decision                    19

1          THE COURT:  Oh, okay.  Did you submit one

2    also, Ms. Catalano?

3          MS. CATALANO:  I would assume so, Your Honor,

4    but --

5          THE COURT:  I think --

6          MS. CATALANO:  -- I wouldn't -- honestly,

7    make sure I have my full motion papers here.  And I

8    just have my brief, unfortunately, but I can --

9          THE COURT:  That's okay.  I think he has it.

10   Well, the one -- the one order should cover --

11         MR. SOGLIUZZO:  We did include it, Your Honor

12   --

13         THE COURT:  Yes, you did.  You did.  So, this

14   order should cover both motions.  I hope the computer

15   picks it up that way.

16         MS. CATALANO:  Your Honor, my only problem

17   was the form of the order, is a finding in the order

18   language that Continental breached it's excess umbrella

19   insurance policy issued to H&M.

20         MR. SOGLIUZZO:  Just on that point, Judge,

21   though, our claim against Continental was a breach of

22   contract, that's why the verbiage was placed in there.

23   That, in fact, the Court -- you're going to grant us

24   partial summary judgment, you have to preclude that, in

25   fact, they've breached their obligation of that

The Court - Decision                           20

1   agreement by not providing the coverage to --

2              THE COURT:  That is not --

3              MR. SOGLIUZZO:  It was a breach of contract

4   claim.  In count one, we have a bad faith claim, which

5   I'm not sure factually would be appropriate at this

6   point in time to the Court.

7              THE COURT:  Do you want to say something

8   about that?

9              MS. CATALANO:  I -- I would agree with the

10  bad faith count, is not even an issue in this court.

11             THE COURT:  I'm not even going to consider

12  the bad faith.

13             MS. CATALANO:  And I just -- for the record,

14  it is my position that just because the Court has made

15  a finding in terms of the construction of this

16  exclusion does not necessarily constitute a breach of

17  the -- of the Continental Policy.

18             MR. SOGLIUZZO:  But it would have to be,

19  Judge.  If you're concluding that, in fact, coverage --

20  you're denying their motion and granting ours, you'd

21  have to concluded that there was coverage under the

22  policy and therefore Continental --

23             THE COURT:  I preclude that there was

24  coverage under the policy as I have found here

25  specifically for the reasons stated.  And therefore,

1    there would have to logically be the breach.  And so

2    I'm signing the order that affect.

3              I still haven't found the other order.

4         MR. SOGLIUZZO:  Well, I think and I

5    apologize, I thought I had one, I thought I had the

6    full motion papers here, Judge of Continental.

7         THE COURT:  Let me -- let me look, I'm

8    looking through all these papers.

9         MR. SOGLIUZZO:  I'll double check, because if

10   not, Your Honor's correct, there may not be a pick up.

11        THE COURT:  Well, I'll just ask --

12        MS. CATALANO:  I can certainly, Your Honor --

13        THE COURT:  Just submit one, just -- this is

14   just for the computer's sake, Counselor's.

15        MS. CATALANO:  Right.  The cover letter

16   indicates I submitted one.

17        MR. SOGLIUZZO:  Yes, you did.  I remember.

18        THE COURT:  I just can't find it.

19                 (Proceedings concluded)

20

21

22

23

24

25

CERTIFICATION                    22

1

2                        Certification

3        I, Sheri Monroe, the assigned transcriber, do

4   hereby certify the foregoing transcript of proceedings

5   on Tape No. 1, from index number 445 to 1963, is

6   prepared in full compliance with the current Transcript

7   Format for Judicial Proceedings and is a true and

8   accurate non-compressed transcript of the proceedings

9   as recorded.

10  *Sheri Monroe*        Date: October 31, 2008

11  Sheri Monroe, CET**00435

12

13

14

15  _____        _____
    KING TRANSCRIPTION SERVICES              (Date)
16  65 Willowbrook Boulevard
    Wayne, New Jersey 07470
17

18

19

20

21

22

23

24

25